[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANT WATERFORD BOARD OF EDUCATION'S MOTION FOR SUMMARY JUDGMENT (#128)
In this rigorously contested matter, the defendant, Waterford Board of Education ("Board"), has filed a motion for summary judgment on the ground that there is no genuine issue of material fact and therefore is entitled to judgment as a matter of law because this court lacks subject matter jurisdiction. The Board argues that the plaintiff, Michelle Stallworth ("Stallworth"), formerly employed by the defendant as a school psychologist, failed to exhaust the administrative remedies in her collective bargaining agreement before commencing this action.
 Procedural History
This action was initiated by Stallworth on June 22, 2000, when she filed a two-count complaint alleging a breach of the covenant of good faith and fair dealing (count one) and constructive discharge (count two) against the Town of Waterford ("Town") and the Board. Following the granting of motions for nonsuit filed by both the Town and Board, Stallworth filed a motion to reopen judgment which was granted on June 10, 2002. Attached to her motion was a four-count complaint alleging the following: constructive discharge (count one), breach of contract (count two), breach of the implied covenant of good faith and fair dealing (count three), and tortious interference with contract (count four). After a motion to dismiss filed by the Board was denied, the Board filed this motion for summary judgment accompanied by a memorandum of law in support and exhibits on November 8, 2002. On November 12, 2002, the Town filed a motion to adopt and join in the Board's motion for summary judgment. Stallworth filed a memorandum of law in opposition to the motion for summary judgment on November 20, 2002. Stallworth then filed a request to amend the complaint on November 22, 2002, with an amended complaint attached. The attached complaint added a fifth count of intentional infliction of emotional distress against both defendants. Neither defendant filed an objection to Stallworth's request to amend. On December 2, 2002, the Board filed a motion to strike Stallworth's revised CT Page 3696 complaint. On January 2, 2003, Stallworth withdrew her action against the Town leaving the Board as the only defendant.
A brief discussion of a procedural matter is necessary prior to a recitation of the facts.
Because the Board has raised subject matter jurisdiction in its motion for summary judgment prior to the plaintiff's most recent request to amend its complaint, this court will consider Stallworth's May 17, 2002 complaint, and not the November 22, 2002 complaint, in rendering a decision on this motion. In Gurliacci v. Mayer, 218 Conn. 531, 545,590 A.2d 914 (1991), our Supreme Court held that because the defendant had raised the issue of subject matter jurisdiction in its motion to dismiss, the trial court erred when it rendered a decision on the plaintiff's motion to amend its complaint prior to deciding the issue of subject matter jurisdiction. "It is axiomatic that once the issue of subject matter jurisdiction is raised, it must be immediately acted upon by the court . . . In this case, the trial court allowed the plaintiff to amend her complaint prior to ruling on the motion to dismiss. By considering the motion to amend prior to ruling on the challenge to the court's subject matter jurisdiction, the court acted inconsistently with the rule that, as soon as the jurisdiction of the court to decide an issue is called into question, all other action in the case must come to halt until such a determination is made." (Citations omitted.) Id.
Although in the present case the issue of subject matter jurisdiction is raised in a motion for summary judgment, the concept is the same. Therefore, the court will not consider the revised complaint filed November 22, 2002, in its decision on the Board's motion for summary judgment.
 Facts
Stallworth was employed as a school psychologist by the Waterford Board of Education from August 26, 1996, until her resignation on August 21, 1998. Stallworth's initial employment evaluations rated her as "very good" and "superior." (Complaint, ¶ 6.) Those ratings suddenly deteriorated after she filed a report based on confidential information learned in counseling sessions with a student. The report alleged that the student was being harassed and physically abused by another student who was the daughter of the school's principal. Because of her understanding of confidentiality requirements, Stallworth refused to provide the confidential information to the school administrators despite their requests. As a result of her refusal to turn the information over, Stallworth was given employment ratings of "not acceptable." (Complaint, ¶ 35.) She was also orally abused and told that she lacked basic CT Page 3697 work-related skills. This abuse and harassment placed her under "extreme pressure and mental and emotional distress and anguish," causing her to resign. (Complaint, ¶ 36.)
Just prior to her resignation, Stallworth filed a grievance pursuant to Section VII (42) (b) of the collective bargaining agreement between the Board and teacher's union ("Agreement"). In her grievance, Stallworth alleged her rights had been violated by inappropriate and inaccurate employment evaluations that rated her competency as "not acceptable" being placed into her personnel file. Stallworth also alleges that the superintendent wrote an "extremely negative" reference letter that was untrue after her employment with the school district ended.
 Discussion
The Board moves that it is entitled to judgment as a matter of law because Stallworth failed to establish or allege that she exhausted the administrative remedies available to her in the Agreement between the Board and the union of which she was a member, and, therefore, this court lacks subject matter jurisdiction. In support of its motion, the Board submits (1) an affidavit from Randall Collins, superintendent of the Waterford Public School District, attesting to the steps taken by Stallworth under the Agreement; (2) the Agreement between the Waterford Board of Education and the Waterford Federation of Classroom Teachers; (3) Stallworth's Statement of Grievance with her June 12, 1998 evaluation attached; (4) a letter from the high school principal to Stallworth denying the action she requested in her Statement of Grievance and stating that she could file a rebuttal which would be included in her personnel file; and (5) three letters, the first of which requests an extension to file a third step grievance, the second of which notifies the teacher's union that Stallworth will be retaining counsel to represent her at the third stage of the grievance procedure, and the third of which schedules the date and time of the hearing for the third stage of the grievance procedure.
In her memorandum in opposition, Stallworth argues (1) the Town's motion does not establish a prima facie case for summary judgment, and (2) Stallworth need not have exhausted her administrative remedies as any such attempt would have been futile or inadequate. In support of her memorandum, Stallworth submits: (1) a Teacher Evaluation Plan; (2) pages twenty-three through twenty-eight of the high school principal's November 1, 2002 deposition; (3) an unsigned affidavit from Stallworth in which she states that she was forced to resign because of abuse and harassment perpetrated by the school administrators;[1] (4) pages one hundred twenty-eight through one hundred forty-five of the superintendent's CT Page 3698 October 28, 2002 deposition; and (5) pages twenty-eight through thirty of the Agreement.
A motion for summary judgment that argues the court lacks subject matter jurisdiction because of a failure to exhaust administrative remedies should be treated as a motion to dismiss. Paul v. New Haven,48 Conn. App. 385, 388, n. 2, 710 A.2d 798 (1998); Johnson v.Bridgeport, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. CV 95 321129 (June 3, 1999, Nadeau, J.); Cuylerv. Board of Education, 46 Conn. Sup. 486, 491-92, 757 A.2d 694 (1998). Therefore, the Board's motion will be treated as such.
"Whenever the absence of jurisdiction is brought to the notice of the court or tribunal, cognizance of it must be taken and the matter passed upon before it can move one further step in the cause; as any movement is necessarily the exercise of jurisdiction." Federal Deposit Ins. Corp. v.Peabody, N.E., Inc., 239 Conn. 93, 99, 680 A.2d 1321 (1996). "Subject matter jurisdiction involves the authority of a court to adjudicate the type of controversy presented by the action before it. Jurisdiction of the subject matter is the power of the court to hear and determine cases of the general class to which the proceedings in question belong. A court does not truly lack subject matter jurisdiction if it has competence to entertain the action before it." (Internal quotation marks omitted.) Doev. Roe, 246 Conn. 652, 661, 717 A.2d 706 (1998). "[A] trial court lacks subject matter jurisdiction over an action that seeks a remedy that could be provided through an administrative proceeding, unless and until that remedy has been sought in the administrative forum . . . In the absence of exhaustion of that remedy, the action must be dismissed." (Citation omitted.) Drumm v. Brown, 245 Conn. 657, 676, 716 A.2d 50 (1998).
In Mendillo v. Board of Education, 246 Conn. 456, 717 A.2d 1177
(1998), our Supreme Court addressed, inter alia, the administrative remedy exhaustion requirement and its exceptions in a factual context similar to the one presented here. The plaintiff in Mendillo was a tenured teacher who resigned her position after the school superintendent allegedly "engaged in a deliberate effort to harass and torment the plaintiff . . . making her continued employment with the . . . school district, for all practical purposes, impossible." (Internal quotation marks omitted.) Id., 465-66. The defendant, the town board of education, moved to dismiss the plaintiff's twelve-count complaint, which included a claim for wrongful constructive discharge, on the ground that the court lacked subject matter jurisdiction because the plaintiff failed to exhaust the administrative remedies available to her under Connecticut General Statutes § 10-151 (d). The trial court granted the defendant's motion and dismissed the plaintiff's complaint in its CT Page 3699 entirety.
"The doctrine of exhaustion is grounded in a policy of fostering an orderly process of administrative adjudication and judicial review in which a reviewing court will have the benefit of the agency's findings and conclusions . . . The doctrine of exhaustion furthers the salutary goals of relieving the courts of the burden of deciding questions entrusted to an agency . . . in advance of possible judicial review." (Internal quotation marks omitted; citation omitted.) Mendillo v. Boardof Education, supra, 246 Conn. 466-67.
"Despite the important public policy considerations underlying the exhaustion requirement, we have grudgingly carved several exceptions from the exhaustion doctrine . . . We have recognized such exceptions, however, only infrequently and only for narrowly defined purposes . . . One of the limited exceptions to the exhaustion rule arises when recourse to the administrative remedy would be demonstrably futile or inadequate . . . An administrative remedy is futile or inadequate if the agency is without the authority to grant the requested relief." (Internal quotation marks omitted; citations omitted.) Mendillo v. Board of Education,supra, 246 Conn. 467.
The very language of the Agreement addresses the facts in the present case. "The sole and exclusive remedy for a teacher who wishes to challenge a termination or non-renewal . . . shall be through the procedures contained in Connecticut General Statute Section 10-151 . . ." Agreement, § 43(c) (5). Stallworth's constructive discharge claim is that she was in fact terminated by the abusive and harassing conduct of the school administrators. If any administrative grievance procedure should have been followed, it was under 10-151 (c). Under the facts in the present case, however, Stallworth need not have followed those procedures because the Board did not follow them, thereby denying her the notice and hearing guaranteed under the statute. Thus, the grievance procedure outlined in the Agreement is not applicable to Stallworth's constructive discharge claim.
Though Mendillo discusses the administrative remedies available to a tenured teacher under General Statutes § 10-151 (d), the analysis is nonetheless persuasive in the present case. General Statutes § 10-151
(c) applies to the termination of teachers who have not attained tenure. Nontenured teachers "may be terminated at anytime for any of the reasons enumerated in subdivisions (1) to (6), inclusive, of subsection (d) of this section;[2] otherwise the contract of such teacher shall be continued into the next school year unless such teacher receives written notice by April first in one school year that such contract will not be CT Page 3700 renewed for the following year." General Statutes § 10-151 (c). Though it does not contain all of the procedural safeguards of subsection (d), subsection (c) provides for a hearing to review the Board's decision under either scenario to ensure that it was not arbitrary or capricious. General Statutes § 10-151 (c). These provisions are present to provide a substantive and procedural framework within which the board may terminate either the contract or the teacher.
The dispute between the parties, had Stallworth brought her constructive discharge claim via the grievance process outlined in General Statutes 10-151 (c), would have been whether her supervisors' intentionally harassing and abusive conduct had forced her to resign. "Having alleged, however, that she had been in effect terminated by [the school administrators'] conduct, [Stallworth] then presumably would have been confronted, not with a statement by [the superintendent] that she had committed any of the six grounds for termination under § 10-151
(d), but with a statement that [the administrators] did not engage in any such conduct and that she in fact had resigned. Moreover, because she had alleged the facts constituting the constructive discharge, she presumably then would have had the burdens of production and persuasion on those allegations.
"The hearing, therefore, as framed by [Stallworth's] request and [the superintendent's] reply, would have been to resolve the question of whether [the school administrators] had constructively discharged her or she had resigned. It would not have involved whether [the decision had been arbitrary or capricious]. Thus, the hearing before the board of education would have borne neither substantive nor procedural resemblance to the kind of hearing contemplated by § 10-151 [(c)]." Mendillo,supra, 246 Conn. 470.
Furthermore, "assuming [Stallworth's] allegations to be true, the [the school administrators], by engaging in an intentionally harassing course of conduct that forced the plaintiff to submit her letter of resignation, also would have totally defaulted in their obligations under § 10-151 [(c)]." Mendillo, supra, 246 Conn. 470. Stallworth did not receive notice of her nonrenewal, nor an opportunity to have a hearing to review the Board's decision to ensure it was not arbitrary or capricious.
The Board next argues that Stallworth was required to, and failed to, exhaust the administrative remedies available to her under the Agreement as to counts two, three and four. The Board argues that these counts must be addressed by the administrative procedures outlined in the Agreement. These three counts, the Board argues, arise out of the allegedly CT Page 3701 inaccurate evaluations and the allegedly harassing and abusive treatment by the school administrators, which the Agreement is specifically designed to address. Furthermore, there is no evidence to suggest that the grievance procedures would be unable to remedy Stallworth's allegations if proven true.
Stallworth, in her memorandum, argues that no administrative remedies need be exhausted before her constructive discharge claim can be brought. Her memorandum is silent, however, as why the administrative remedies available to her need not be exhausted before counts two through four can be brought.
"Not every dispute that arises out of an employment relationship constitutes a grievable matter. Whether a dispute is grievable under a collective bargaining agreement depends on the proper interpretation of the agreement." Mendillo, supra, 246 Conn. 476.
While Stallworth's constructive discharge claim is a termination which is not covered by the Agreement and could not be remedied by an administrative hearing, counts two through four involve actions by the school administrators, which are covered by the Agreement. These counts allege that her superiors made false and inaccurate statements about her both orally and in the teacher evaluations. The Agreement covers disputes arising from the relationship between a teacher and her superiors and disputes arising from employment evaluations. Section 42 of the Agreement covers personnel files, which contain employment evaluations. "If the teacher believes that material to be placed in his/her file is inappropriate or in error, he/she may request adjustments provided cause is shown through the grievance procedure, whereupon the material will be corrected or expunged from the file. Evaluations under the Teacher Evaluation System may only be grieved pursuant to the grievance procedure in this contract to the Superintendent's level (Step 3) and may only be grieved to the Superintendent's level in cases of `Unsatisfactory' or `Minimally Acceptable' ratings." Agreement, § 42. The language of the Agreement addresses the school administrators' actions.
Furthermore, Stallworth fails to offer any evidence that contradicts the superintendent's testimony that the Agreement covers the teacher-principal relationship. (Deposition of Randall Collins, pp. 137-38.) The Board does have the ability to discipline persons in their employ, including school administrators. If they found school administrators had acted inappropriately, they could take action. Thus, the administrative grievance process can provide a remedy, and, therefore, reliance on that process would not be futile. CT Page 3702
Also, Stallworth cannot be considered to have exhausted all available administrative remedies provided pursuant to the Agreement. Stallworth has submitted no evidence to counter the superintendent's assertion that Stallworth did not complete the grievance process.
Stallworth raises the issue that the letter written by the superintendent was sent after her employment ended and therefore it is not covered by the Agreement.[3] While this is not disputed, it is not material to any of the claims raised by the defendant. This particular fact would be relevant to a non-contractual claim. Counts two through four, however, are claims that arise from a contract. "It is axiomatic that the . . . duty of good faith and fair dealing is a covenant implied into a contractual relationship." (Internal quotations marks omitted.)Macomber v. Travelers Pronerty Casualty Corp., 261 Conn. 620, 638,804 A.2d 180 (2002). "Breach of contract" and "tortious interference with contract" claims require the existence of a contract by their very name. In the present case, a contract existed while Stallworth was employed by the school district. No contract existed after employment ended in August 1998. Therefore, any facts that occurred after the contract between Stallworth and the Board was terminated are not material to proving any of Stallworth's claims.
 Conclusion
The defendant's motion for summary judgment is denied as to count one because Stallworth was not required to exhaust the administrative remedies under the Agreement as it does not cover constructive discharge claims and any reliance on these remedies would have been futile. Therefore, the court has subject matter jurisdiction over count one. However, Stallworth failed to exhaust her administrative remedies for counts two through four, and, there being no applicable exception, the court is without subject matter jurisdiction as to these three counts. Therefore, the count grants the defendant's motion for summary judgment with respect to those counts and counts two, three and four are dismissed.
 Robert C. Leuba Judge Trial Referee